33 C.C.P.A.(Patents)

**Application of CROSTHWAIT et al.**
**Patent Appeal No. 5145.**

Court of Customs and Patent Appeals.
May 7, 1946.

Rehearing Denied June 7, 1946.

Harvey M. Gillespie, of Chicago, Ill. (Karl Fenning, of Washington, D. C., of counsel), for appellants.

W. W. Cochran, of Washington, D. C., for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner rejecting as unpatentable over the prior art claims 3 to 6, inclusive, of an application for a patent for a "Balanced Resistance Type Temperature Control Apparatus." Claims 7 to 17 inclusive were allowed by the examiner.

Claims 3 and 4 are illustrative of the subject matter and read as follows:

"3. In a Wheatstone bridge temperature control apparatus, means for setting the rate of heat supply in proportion to the rate of heat loss through an outside window, and a dual potentiometer comprising simultaneously adjusted resistances in two branches of the bridge for increasing or decreasing the rate of heat supply corresponding to any given temperature at the inner surface of the window, and also increasing or decreasing the rate of change of heat supply for equal increments of change in the temperature at the inner surface of the window.

"4. Means for controlling the temperature within a space, comprising a valve for regulating the flow of heating medium to the space, motor-mechanism actuated at regularly spaced intervals for setting the valve, and a Wheatstone bridge apparatus associated with the motor-mechanism to determine the extent and direction of the valve adjustments, the bridge comprising means for setting the rate of heat supply in proportion to the rate of heat loss through an outside window, and means connected in two bridge branches for increasing or decreasing this rate."

The references relied upon are: Otis, 2,012,285, August 27, 1935; Coleman, 2,246,-575, June 24, 1941; Russel, 2,279,582, April 14, 1942.

Appellants have invented an apparatus by means of which the heat supply in a space to be heated is automatically controlled to a desired temperature. The supply of the heating medium (steam in the device illustrated in the application) to the radiators is through a valve, the operation of which is controlled by two separate means in a Wheatstone bridge. One means in a branch of the bridge includes a thermostat called a "window-selector." It is fixed to the inner surface of an outside glass window and is responsive to the temperature there. It is intended to measure the loss of heat, if any, from the room. The other means in a different branch is called a "heat-balancer," and consists of two electric circuits in each of which is a resistance coil. One coil is below a radiator and one above it. The resistance of the coils becomes greater with increase in temperature. The difference between the resistances indicates the rate of heat being supplied.

When the temperature at the window becomes lower than the desired room temperature, the apparatus must be so operated that the heat output increases to make up for the heat loss. In other words, the steam valve is so regulated that the rate of heat supply indicated by the "heat-balancer" just offsets the rate of heat loss shown by

the "window-selector." By balancing those rates a constant room temperature is obtained.

The circuits which include the "window-selector" and the "heat-balancer" are connected with a galvanometer in which there is a pointer registered at zero when sufficient steam is being supplied to keep the temperature at a determined level. The pointer moves to the right, making connections with a relay in the bridge when more heat is required, thus bringing into action a valve-opening motor which further opens the steam valve, resulting in more heat being supplied to the system. When less heat is required the pointer turns to the left, activating a valve-closing motor lessening the valve opening. The opening and closing of the valve is in short regularly spaced intervals. On opposite sides of the galvanometer in separate branches of the Wheatstone bridge are two simultaneously knob-adjustable potentiometers by means of which the steam supply may be increased or decreased over or under normal as desired.

The Coleman reference relates particularly to Wheatstone bridge circuits for temperature control systems in buildings. It is stated in the specification that the invention is especially suited for use in a temperature control device shown in the patentee's prior patent No. 2,144,105, dated January 17, 1939. In that patent a Wheatstone bridge circuit is disclosed comprising resistors responsive respectively to outdoor temperature entirely and to the temperature of the heating system. The heat in the space to be heated is said to be regulated in accordance with the relation between the two temperatures, taking the outside temperature as indicating the rate of loss of heat and the temperature of the heating system as an index of the rate of input of heat. The system is so regulated as to keep the resistance of the two thermometers constant.

The Coleman reference substantially shows the structure recited in the appealed claims, and it is not deemed necessary to analyze it in greater detail.

The Russel patent relates to a device for the control of humidity in an enclosed space. It discloses a thermostat control means on the inside surface of a window pane where it is affected by outdoor temperatures.

The Otis patent is for a method of room temperature regulation. The apparatus shown contains a thermostat mounted on the inside of an outside wall and responsive to outdoor temperatures.

The examiner rejected the appealed claims as unpatentable over the Coleman reference in view of either the Russel or the Otis patents. The board affirmed the rejection on the same grounds.

Claims 5 and 6 differ from claim 4, the former by the limitation "the bridge comprising means for automatically setting the rate of heat supply," and the latter by the recitation of "a dual potentiometer" as the means for changing the rate of change of the heat supply.

It appears to us that the apparatus described in the appealed claims is not patentably different from that shown in the Coleman reference in view of the other references. In appellants' structure the "window-selector" is on the inside of the window pane and the like means in the Coleman structure is on the outside. therefore the latter means cannot be affected by the temperature on the inside of the space to be heated as is the former. Appellants stress the fact that their "window-selector" is responsive not only to outdoor temperature but is also slowly affected by the room temperature. It may well be that in appellants' system the placing of the "window-selector" results in a better and more efficient measure of heat loss than the location of the same means in the Coleman structure. But the placing of the thermostat, as disclosed in the Russel patent, on the inside of a window pane is clearly a suggestion to the ordinary skilled worker in the art, and it surely would not require the exercise of invention for appellants to so locate their "window-selector." The same reasoning applies to the Otis patent, wherein the heat control thermostat is on the inside surface of an outer wall. That means is also sensitive to indoor as well as outdoor temperatures. Therefore we hold it would not require

invention to locate the outdoor temperature responsive means of the Coleman apparatus on the inside as shown by the Russel and Otis patents.

It is true that in the measuring of "the rate of heat supply in proportion to the rate of heat loss" the "heat-balancer" of appellants measures the difference in temperature between the incoming heat at the bottom of the radiator and the outgoing heat at the top thereof while the inside temperature responsive means of the Coleman patent, more fully described in his patent No. 2,144,105, is "wrapped about one of the steam or hot water outlet pipes from the boiler." But the temperature of a heated room must depend upon the temperature of the heating medium emanating from the boiler or other heating means. Where the heat at its source is of a higher order the room temperature must be correspondingly raised. Since the inside resistance means of the Coleman device is designed to measure the heat of steam coming from the boiler it must necessarily measure the heat supply coming into the room. The cooperation between the "window-selector" and the "heat-balancer" of appellants is the same in a patentable sense with respect to the involved claims as that shown by the Coleman reference, wherein the outside thermostat "is taken as an index of the rate of loss of heat from the interior of the building" and "the temperature of the heating system is taken as an index of the rate of heat input to the space." In both systems the bridge is designed to be kept in balance as the increased rate of heat loss is compensated by an increased rate of heat supply. Therefore in our opinion the inside temperature means of Coleman is the equivalent of the "heat-balancer" of the device of appellants.

The Coleman reference discloses a dual potentiometer. Appellants contend that it does not comprise "simultaneously adjusted resistances in two branches of the bridge."

The Wheatstone bridge of the Coleman reference shows one of the resistances to be in one branch connected in parallel to the galvanometer and a second containing another resistance in another branch likewise connected. They are simultaneously adjustable by means of a knob so that "the rate of change of heat supplied" may be varied by varying "the relative effects of outdoor temperature and boiler temperature on the supply of heat."

Claim 4 includes "a valve for regulating the flow of heating medium to the space, motor-mechanism actuated at regularly spaced intervals for setting the valve." While the Coleman reference does not specifically show such a mechanism operative at intervals, it refers to the patentee's said earlier patent in which is disclosed a constantly rotating cam for a periodical on-and-off switch. That switch appears to be identical with the switch shown in the present Coleman reference which is clearly designed to operate in the same way as the structure in his earlier patent. The control means of the heat supply in the earlier Coleman patent, in our opinion, is the equivalent of the control valve described in claim 4.

It is stated in Claim 5 that the means connected in two branches of the bridge for increasing or decreasing the rate of heat supply may be automatically or manually adjustable. There is, however, no recitation of structure defining those means and therefore those statements cannot impart patentability to the claim. In re Rundell, 48 F.2d 958, 18 C.C.P.A., Patents, 1290.

The limitation of a dual potentiometer contained in claim 6 has hereinbefore been disposed of.

In our opinion the tribunals below committed no error, and the decision appealed from is affirmed.

Affirmed.